## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 15 2017, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph Leon Payne
Austin, Indiana

ATTORNEY FOR APPELLEE

John W. Mead
Mead, Mead & Clark, P.C.
Salem, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Barbara A. Shirley,<br>*Appellant*,<br><br>v.<br><br>Donna Jent,<br>*Appellee*. | November 15, 2017<br><br>Court of Appeals Case No.<br>88A05-1703-ES-508<br><br>Appeal from the Washington<br>Circuit Court<br><br>The Honorable Larry W. Medlock,<br>Judge<br><br>Trial Court Cause No.<br>88C01-1511-ES-100 |

**Brown, Judge.**

[1] Barbara A. Shirley appeals from an order of the trial court removing her as personal representative of the estate of Doug Bieghler. Shirley raises one issue which we revise and restate as whether the court abused its discretion in removing her as the personal representative of the estate. We affirm.

## Facts and Procedural History

[2] On July 15, 2015, Shirley filed a Petition for Appointment of Personal Representative in the estate of her son Doug Bieghler under cause number 88C01-1507-EU-61 ("Cause No. 61"), and the following day the court issued an order granting the petition and ordering unsupervised administration. A number of claims were filed against the estate, including several by Donna Jent. The chronological case summary includes entries which indicate that Jent or her attorney filed claims for "List of Gifts," "$8,000.00," "$9,935.00," "Wheeler, gift," and "Claim #5: 1/2 Net Estate," and "Claim #5-A for Baler parts and manual and for 580K Case Backhoe." Appellant's Appendix Volume 2 at 4. On November 18, 2015, Jent filed a Petition for Revocation of Order Granting Unsupervised Administration. On November 23, 2015, the court issued an Order Revoking Unsupervised Administration stating that, from that day forward, Shirley as personal representative of the estate of Bieghler shall proceed according to the provisions of the Indiana Code governing supervised estates.

[3] On November 24, 2015, the estate action was transferred from Cause No. 61 to cause number 88C01-1511-ES-100 ("Cause No. 100"). In December 2015, Jent filed a Motion for Declaratory Judgment. On March 8, 2016, Shirley as

administrator of Bieghler's estate and Jent filed an Agreement Satisfying Claims of Donna Jent which provided that Jent would receive certain personal property, would be reimbursed by the estate for the funeral bill of $9,935 and would be paid $8,000 to satisfy her claim upon sufficient funds being received by the estate; that Jent would return certain personal property to Shirley as administrator of the estate; and that Jent would dismiss her motion for declaratory judgment. The first page of the agreement included language stating "this agreement satisfies all claims made or to be made by Donna Jent and she releases the Estate of Doug Bieghler from any further claim, obligation or liability," this language was crossed out, and the initials of Shirley and Jent appear next to the crossed-out language. Appellee's Appendix Volume 2 at 2.

[4] On June 2, 2016, Shirley filed a Motion for Court Authority to Pay Claims and Costs of Administration which stated that many of the estate assets were sold at an auction on April 30, 2016, making the estate solvent and liquid enough to make payment of most pending claims, and which requested authority to pay certain claims and costs. The motion, in listing claims, stated in part: "#5 Donna Jent - ½ of net estate - disallowed to be set for mediation." Appellant's Appendix Volume 2 at 50. On August 3, 2016, Jent filed a motion to dismiss her request for declaratory judgment, and on August 5, 2016, the court granted the motion to dismiss.

[5] On October 17, 2016, Shirley as administrator of the estate filed a Personal Representative's Final Accounting and Petition to Settle and Allow Accounting which stated in part that upon his death the decedent was the sole owner of

10.48 acres of unimproved real estate and the real estate is to be transferred to Shirley and the decedent's brother as tenants in common, that the personal property of the estate was sold at public auction, that the amount left after final distributions was $12,869.71, and that all distribution of the estate's assets was accomplished upon certain payments including $6,434.85 to the decedent's brother, $6,434.86 to Shirley, and "10.48 Acres to [the decedent's brother] and Barbara Shirley." Appellant's Appendix Volume 2 at 19.

[6] On December 2, 2016, Jent filed a Motion for Leave of Court to Amend Claim alleging that she and the decedent cohabitated for many years, she worked side by side with the decedent in the conduct of his business, she was never compensated for her labor and services, and she should be permitted to pursue a wage claim. Also on December 2, 2016, Jent filed a Petition for Removal of Personal Representative alleging that Shirley failed to properly account for all known property and assets of the decedent, disposed of property and assets of the decedent without fair, just and adequate compensation, failed to adjust, resolve or compromise the claim filed by Jent, failed to file a complete inventory of the property and assets of the decedent, and failed to properly account for the decedent's debts and obligations. On December 9, 2016, the court granted Jent's Motion for Leave to Amend Claim.

[7] On January 20, 2017, Jent filed an Amended Claim in which she alleged that a partnership between herself and the decedent arose as a result of a seventeen-year relationship in which she and the decedent cohabitated as husband and wife. She alleged that throughout the relationship the decedent was engaged in

the business of installing agricultural tile, that she worked side by side with him and provided services and labor in the installation of tile, that she was never compensated for her services, and that she should be compensated for her labor in a wage comparable to that of a construction wage for laborers. Jent sought damages in an amount equal to one-half of the decedent's net distributable estate or $200,000, whichever is greater, and attorney fees and costs.

[8] On January 23, 2017, the court held a hearing on Jent's Petition for Removal of Personal Representative at which it heard testimony from Jent, Shirley, the decedent's brother, and James Moon. On February 6, 2017, the court issued an Order Removing Personal Representative and Appointing Successor Personal Representative. The order provides in part:

> 3. Removal of Barbara Shirley as personal representative is appropriate as a result of the following:
>
>   - Failed to properly account for all known property and assets of the decedent;
>   - Disposed of property and assets of the decedent without fair, just, and adequate compensation;
>   - Failed to adjust, resolve, or compromise the claim filed by claimant, Donna Jent;
>   - Failed to file a complete inventory of the property and assets of the decedent; and
>   - Failed to properly account for the debts and obligations of the decedent.
>
> 4. Removal of the original personal representative and appointment of the successor personal representative is in the best interests of all of the beneficiaries under the decedent's will.

5.  The parties will have 5 business days to agree on the person to be appointed as the successor personal representative.  If the parties do not reach an agreement, the Court will appoint an uninterested personal representative.

Appellant's Appendix Volume 2 at 18.  Shirley appealed the court's order.  The trial court later subsequently appointed Andrew Wright as special personal representative.

## *Discussion*

[9]  The issue is whether the trial court abused its discretion in removing Shirley as the personal representative of the estate.[1]  "A court of probate jurisdiction has great latitude and wide discretion in matters concerning the appointments and the removal of administrators . . . , and this court will not attempt to control or interfere with the Probate Court's action therein, except in a case where it is clear that its discretion has been abused."  *Hauck v. Second Nat. Bank of Richmond*, 153 Ind. App. 245, 267, 286 N.E.2d 852, 865 (1972) (citing *Helm v. Odle*, 129 Ind. App. 478, 480, 157 N.E.2d 584, 585 (1959)), *reh'g denied*.  Ind. Code § 29-1-10-6(b) provides:

When the personal representative becomes incapacitated (unless the incapacity is caused only by a physical illness, infirmity, or impairment), disqualified, unsuitable or incapable of discharging

---

[1] Jent asks us to dismiss on grounds that Shirley did not name Andrew Wright as special personal representative as a party to this appeal.  Shirley was required to file, and did file, her notice of appeal well before the trial court issued its order appointing Wright, Wright filed his oath, and letters of administration were issued.  Under the circumstances we decline to dismiss, and we exercise our discretion to review the trial court's order.

the representative's duties, has mismanaged the estate, failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be domiciled in Indiana, the court may remove the representative in accordance with either of the following:

(1) The court on its own motion may, or on petition of any person interested in the estate shall, order the representative to appear and show cause why the representative should not be removed. The order shall set forth in substance the alleged grounds upon which such removal is based, the time and place of the hearing, and may be served upon the personal representative in the same manner as a notice is served under this article.

(2) The court may without motion, petition or application, for any such cause, in cases of emergency, remove such personal representative instantly without notice or citation.

[10] The removal of a personal representative after letters are duly issued does not invalidate official acts performed prior to removal. Ind. Code § 29-1-10-6(c). A personal representative of an estate is regarded as a trustee appointed by law for the benefit of and the protection of creditors and distributees of that estate. *In re Bender*, 844 N.E.2d 170, 178 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied.* The personal representative has a duty to protect and preserve the assets of the estate to properly distribute those assets to the rightful heirs and devisees of the decedent. *Estate of Daniels ex rel. Mercer v. Bryan*, 856 N.E.2d 763, 768 (Ind. Ct. App. 2006). The personal representative has a duty to care for and conserve the assets of a decedent's estate so that such assets are not wasted or mismanaged.

*Ind. Dep't of State Revenue, Inheritance Tax Div. v. Cohen's Estate*, 436 N.E.2d 832, 836 (Ind. Ct. App. 1982).

[11]     Ind. Code §§ 29-1-7.5 relates to unsupervised estates, and Ind. Code § 29-1-7.5-3.2(a) provides that "[n]ot more than two (2) months after the appointment of a personal representative under this chapter, the personal representative shall prepare a verified inventory of the decedent's probate estate. The inventory may consist of at least one (1) written instrument." Ind. Code § 29-1-7.5-3.2(b) provides that the inventory must indicate the fair market value of each item including a statement of all known liens and other charges on any item and that the property must be classified as real property; furniture and household goods; emblements and annual crops raised by labor; corporate stocks; mortgages, bonds, notes, or other written evidences of debt or of ownership described by the name of the debtor; bank accounts, money, and insurance policies; and all other personal property identified including the decedent's proportionate share in any partnership. Ind. Code § 29-1-12-1 regarding the classification of properties contains similar requirements. Ind. Code § 29-1-16-4 provides in part that "[a]ccounts rendered to the court by a personal representative shall be for a period distinctly stated and shall consist of three (3) schedules, of which the first shall show the amount of the property chargeable to the personal representative; the second shall show payments, charges, losses and distributions; the third shall show the property on hand constituting the balance of such account, if any."

[12] Shirley argues that the court abused its discretion by removing her without cause. She argues no facts adduced at the hearing tended to show she failed to account for all assets of the decedent, the personal property was sold at public auction, the estate was unsupervised when an accounting was performed and she was not required to file the same with the court, and that she paid all of the claims except for Jent's claim. Jent maintains that, in addition to the equipment, the estate included real property, income from crops, and at least one bank account, and that Shirley's accounting did not account for all property, show what property she has on hand, or account for the disposition of significant items of personal property that were not sold at auction. She argues sufficient evidence was submitted to support the trial court's decision to remove Shirley and appoint a special administrator.

[13] The record reveals that the October 17, 2016 accounting filed by Shirley indicates the estate included real property and income from crops. It also reveals that, in addition to six claims filed by Jent or her attorney against the estate, other claims were filed on behalf of ten other claimants. Shirley's June 2, 2016 motion for authority to pay claims stated in part: "Donna Jent - ½ of net estate - disallowed to be set for mediation." Appellant's Appendix Volume 2 at 50. Moon testified that he went to the property of the decedent for the purpose of conducting an inventory and appraisal of certain equipment and that he prepared an estimate of equipment values for the estate in August 2015, and the sixteen-page list of assets and estimated values was admitted at the January 23, 2017 hearing. The list prepared by Moon stated that it did not include the

value of four items. Moon indicated there were items which would commonly be referred to as junk at the place. Moon's list did not identify any real property, income from crops, money, or bank accounts. The court also admitted into evidence the final settlement from the April 30, 2016 auction which set forth the proceeds of the sale, the seller's expenses, and the total proceeds to the seller.

[14] Jent testified that to her knowledge certain items on the list prepared by Moon did not sell at the auction and specifically noted thirteen items in Moon's list which had not been sold. Moon's list shows that he estimated that the value of each of the thirteen items identified by Jent ranged from $250 to $9,000, and the total of the estimated values for those items was over $30,000.

[15] When asked if the document prepared by Moon reflected the real property owned by the decedent, Shirley testified "[w]ell, you realize, my late husband and I, had, was in the excavating business, and like that car and things, some of the tings [sic] his dad and I had bought for him" and "[s]o there was things on there, and he had used the equipment after his dad passed away when he started back into excavating, he used his dads [sic] equipment, and that's where he started from." Transcript at 12-13. When asked if there was equipment in Moon's list that did not belong to the decedent, Shirley answered "I can't answer that, I don't really know. I'm not as familiar with the equipment as everybody else is." *Id.* at 13. When asked "were there any errors or inaccuracy in [Jent's] testimony about wasn't sold," Shirley answered "I don't know for sure." *Id.* Shirley testified that the decedent had a bank account.

[16] The decedent's brother testified that he was present at the sale at the property, that several items that belonged to his brother did not sell, that some of the shop equipment belonged to him, and that a lot of the tools "was my dad[']s, and my grandfather[']s, and some was mine." *Id.* at 20-21. When asked the value of the unsold items, he answered "[p]robably 5, 6,000 dollars." *Id.* at 21. Shirley's October 17, 2016 accounting does not appear to explicitly account for the distribution of property which was not sold at the auction.

[17] Based upon the record and in light of the trial court's great latitude in matters concerning the removal of administrators, we cannot say that the court abused its discretion in finding that Shirley should be removed as the personal representative of the estate and a special personal representative appointed.

### *Conclusion*

[18] For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

Najam, J., and Kirsch, J., concur.